# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION



SOUTHERN DISTRICT OF MISSISSIPPI
FILED

DEC 01 2025

ARTHUR JOHNSTON
BY_____ DEPUTY

*Case 1:25-cv-00233-LG-RPM*

### YURI PETRINI, SUMIRE MAEDA
Plaintiffss,

v.

### CITY OF BILOXI, MISSISSIPPI, JERRY CREEL, PETER C. ABIDE, CURRIE JOHNSON, JENNIFER POLK, TARA BUSBY, and DONNA PARKER,
Defendants.

# SECOND AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983 AND JURY DEMAND

## PARTIES

**Plaintiffs Yuri Petrini and Sumire Maeda are** individuals residing in Harrison County, Mississippi and owners of 1606 Beach Boulevard, Biloxi.

**Defendant City of Biloxi, Mississippi** is a municipal corporation organized under the laws of Mississippi.

**Defendant Jerry Creel** is sued in his official capacity as Building Official and Community Development Director for the City of Biloxi and in his individual capacity.

**Defendant Peter C. Abide** is sued in his official capacity as City Attorney for the City of Biloxi and in his individual capacity.

**Defendant Currie Johnson** is sued in his official capacity as City Attorney for the City of Biloxi and in his individual capacity.

**Defendant Jennifer Polk** is sued in her official capacity as Plans Reviewer for the City of Biloxi and in her individual capacity.

**Defendant Tara Busby** is sued in her official capacity as Code Enforcement Manager for the City of Biloxi and in her individual capacity.

**Defendant Donna Parker** is sued in her individual capacity as a private citizen residing in Harrison County, Mississippi.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction). Plaintiffs brings claims under 42 U.S.C. § 1983 for violations of rights secured by the United States Constitution. This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a).

Venue is proper in the Southern District of Mississippi under 28 U.S.C. § 1391(b) because all Defendants reside in this district and all events giving rise to the claims occurred in this district.

## STATEMENT OF FACTS

### Creel's Unauthorized Brokerage and Keesler Conflicts

1. In October 2023, Defendant Jerry Creel, serving as Building Official and Community Development Director, acted as unauthorized broker by providing Plaintiffs's contact information to a banker and Joel Fields, a businessman connected to Keesler Air Force Base, who then made multiple insistent visits to Plaintiffs's property at 929 Division Street seeking to purchase it for an IT training facility connected to Keesler Air Force Base. The banker stated that Creel referred a "strong customer" who "needed" the building. Fields and the banker, who will serve as witnesses once subpoenaed through discovery, approached

2

Plaintiffs repeatedly based on Creel's facilitation. Creel's involvement with Keesler-related development extends to August 2019 when he publicly advocated on WLOX television for expanding the West Biloxi Historic District specifically to control Division Street aesthetics leading to Keesler's new main gate, stating "I suggested to the administration that we might want to turn this into a review district so that any proposed changes to the exterior of the buildings would go through the Architectural Historical Review Commission." The historic district expansion Creel initiated and promoted now burdens both 929 Division Street and Plaintiffs's property at 287 Bohn Street with undefined aesthetic requirements. This pattern demonstrates using official authority to advance Keesler-connected interests and facilitate property transfers rather than legitimate code enforcement.

### The Polk Stop Work Order at 929 Division Street

2. On May 16, 2024, after months of continued brokerage efforts by Creel including multiple insistent visits from Joel Fields and the banker that Plaintiffs repeatedly refused, prohibitions at 929 Division Street intensified. Plaintiffs, a licensed contractor holding Mississippi licenses in Building, Electrical, Mechanical, and Plumbing trades, applied for and obtained a "roof replacement" permit at 929 Division Street after appearing in person, submitting the application through two Building Department review sections, paying all required fees, and receiving approval. The permit explicitly stated "roof replacement" for a straightforward project: remove existing roof material and install new roof material with no structural modifications. While contractors were removing only the existing roof material without touching any structural elements, Defendant Jennifer Polk, acting under Creel's supervision, ordered work stopped without site visit or notice. The posting inspector admitted "no knowledge" of the reason. The order violated IRC section R114.2 by failing to state reasons or conditions for resumption—eliminating procedural protections that have "ancient roots" in

Anglo-American jurisprudence. *Greene v. McElroy*, 360 U.S. 474, 496 (1959). "Certain principles have remained relatively immutable": notice of charges, opportunity to be heard, and chance to cure before sanctions. *Id.* These are not modern inventions but derive from the Magna Carta's guarantee of "law of the land" (1215) and the Fifth Amendment's prohibition on deprivation "without due process of law" (1791). When Plaintiffs went to the Building Department seeking to understand what violations justified stopping his work, Defendant Polk claimed the "permit language not clear" without citing ANY violations—denying the very notice protections that predate the United States itself, then demanded engineering despite Plaintiffs informing her that an engineer was engaged with the project and that this standard roof replacement work was covered by IRC and IBC prescriptive tables requiring no engineering because only roof material was being replaced. Defendant Polk then pivoted to the "50 percent rule" using area rather than value to suggest that no modifications are legal at all, and when corrected she then threatened to require appraisal or county assessment, which would be fine as property is complaint. Defendant Polk never provided written reasons, resumption conditions, or appeal information. **Creel subsequently contacted engineer Terry Moran without informing Plaintiffs;** Moran confirmed involvement in all project stages. Despite this verification presumably in search of verification to resume, neither Creel nor Defendant Polk ever lifted the order. The property remains exposed for over fourteen months with materials deteriorating, rendering it unmarketable and substantially devalued.

### The Seventeen-Month Fence Permit Denial

3. Plaintiffs Yuri Petrini, applied for a security fence permit in March 2024 following break-ins at 287 Bohn Street in Biloxi's historic district. Defendant Jerry Creel serves as Building Official, Community Development Director, and final decision-maker for historic requirements. In August 2019, Creel publicly advocated for expanding the West Biloxi

Historic District **specifically to control aesthetics** along Division Street leading to the new Keesler Air Force Base main gate, stating on television that he "suggested to the administration that we might want to turn this into a review district so that any proposed changes to the exterior of the buildings would go through the Architectural Historical Review Commission." The historic district expansion Creel initiated and promoted now burdens Plaintiffs's property with undefined aesthetic requirements. For seventeen months Creel has denied the permit while imposing undefined "1860s aesthetics" requirements without written standards, refusing a security exemption under ordinance section 23-2-4-G that he previously granted Plaintiffs for a fence at the North Division Street right-of-way. Plaintiffs's proposed fence would sit one hundred fifty feet inside the property line on private land. Defendant Creel admits in open television that he potentially committed fraud, as designating an area as historical for aesthetics control is expressly prohibited.

**The Stallworth Favoritism**

4. Bill Stallworth, an American-born citizen, owns adjacent property at 283 Bohn Street under identical ordinances. After Plaintiffs filed federal suit on June 6, 2025, Creel authorized Stallworth to construct a fence at the public right-of-way without permits or review. Stallworth stated on July 8, 2025, that Creel "personally green lighted it" with "no requirements." At Plaintiffs's July 25, 2025 arraignment on separate criminal charges, Defendant Creel stated on the record that Plaintiffs "bypassed us and filed a federal lawsuit," establishing retaliatory motive for the selective enforcement. A survey performed August 28, 2025, at Defendants' request confirms Stallworth's fence, shed, and AT&T equipment enclosure encroach onto Plaintiffs's land. Defendants refused to require Stallworth to correct the illegal work despite having allowed it to be conducted illegally, then sanitized the violations through expedited Historic Preservation Commission approval, and told Plaintiffs

he must go to Harrison County Circuit Court and sue Stallworth to move the fence, after

Defendants themselves requested the survey to verify if trespass occurred. After lawsuit

service on August 9, 2025(Saturday), Stallworth modified the fence on August 12(Monday)

and Creel arranged **expedited** Historic Preservation Commission placement for the next

meeting without requiring Stallworth to attend or submit plans, mailing Plaintiffs's statutory

notice to his Miami address despite knowing he was in Mississippi and using armed police

deployment to deliver civil notices to Plaintiffs. Stallworth's fence blocks AT&T utility

equipment at the right-of-way; AT&T technicians now traverse Plaintiffs's property daily.

**The Parker Boundary Coercion**

5. Defendant Donna Parker, an American-born private citizen at 135 Miramar Avenue,

maintains an ongoing boundary dispute with Plaintiffs regarding the property line at 1606

Beach Boulevard. Rather than pursue civil remedies in Harrison County Circuit Court, Parker

weaponized municipal code enforcement to resolve her private dispute. Defendant Parker

called City officials regarding Plaintiffs's driveway construction at 1606 Beach Boulevard.

Plaintiffs had provided professional surveys showing the driveway on his property.

Defendant Parker was present at Plaintiffs's property when Defendant Tara Busby and

inspectors arrived, demonstrating pre-coordination of the inspection. Defendant Parker

personally facilitated the inspection by allowing Busby and inspectors to access Plaintiffs's

property through Parker's land. Defendant Parker remained on site while Defendant Busby

refused to examine professional surveys and issued a stop work order placed inside

Plaintiffs's excavator, effectively seizing equipment on Plaintiffs's property. Parker's physical

presence during the stop work order issuance and her facilitation of property access

demonstrates she acted as enforcement agent rather than mere complainant. When Plaintiffs

called Creel requesting removal, Creel conditioned removal on Plaintiffs building according

to Parker's claimed boundary rather than Plaintiffs's surveyed line. Plaintiffs built the

driveway smaller than surveyed. Following the stop work order, Defendant Parker admitted

to Plaintiffs that she never intended enforcement to go that far and did not ask officials to

issue the stop work order, demonstrating consciousness of guilt that her invocation of state

authority triggered unconstitutional deprivation. Defendant Parker maintains an illegal

sprinkler system that commits daily trespass onto property Plaintiffs claims by survey; Creel

has taken no enforcement action against Parker while denying Plaintiffs's fence permit. Upon

information and belief, Defendant Parker sent photographs to Creel and reported construction

activities in concert with his enforcement actions, including his Sunday surveillance on

August 2, 2025, at 929 Division Street where Plaintiffs filmed Creel entering the property

without warrant or consent and storming off once he realized he was being documented.

Defendant Parker called City officials about an abandoned sewer Plaintiffs covered on a

neighbor's lot that preceded delivery of a threatening note stating "LIGHT IS OUT AS OF

7/29" at Plaintiffs's property, and communicated with Creel on Sundays regarding Plaintiffs's

activities.

**The Records Obstruction**

7. After Plaintiffs filed suit, he submitted public records requests on June 23, 2025. On June

27, Defendants Peter Abide and Currie Johnson denied them as "fishing expedition" stating

"because you sued us." Abide and Johnson denied requests for 2019 historic district

expansion records.

**The ADA Violations**

8. Plaintiffs has documented disabilities including narcolepsy and vision impairment from

recent surgeries. Plaintiffs requested reasonable accommodations. Defendants have not

responded, have not engaged in the interactive process, and have not provided accommodations while accommodating Stallworth without requirements.

**The Pattern Evidence**

9. Justin Vandevender, an A-6 Retired and Disabled Veteran, contacted Plaintiffs on August 24, 2025, after researching City lawsuits. Vandevender provided documentation including City affidavits, court proceedings, Creel records decisions, Illing affidavits, and Abide billing records. Vandevender was charged with a misdemeanor later discharged. Several other individuals including disabled persons and minorities have provided similar accounts regarding the same defendants.

## CAUSES OF ACTION

### COUNT I: PROCEDURAL DUE PROCESS - VOID HISTORIC DISTRICT DESIGNATION

**42 U.S.C. § 1983 - Fourteenth Amendment - Against: Jerry Creel, Peter C. Abide, Currie Johnson, Jennifer Polk, Tara Busby, City of Biloxi**

1. Before government may impose historic district restrictions depriving property owners of liberty and property interests, two independent requirements must be satisfied: (1) the legislature must explicitly authorize such restrictions, and (2) if authorized, the restrictions must be imposed with notice and meaningful opportunity to be heard. *Greene v. McElroy*, 360 U.S. 474, 507 (1959) ("decisions of great constitutional import...must be made explicitly...because explicit action, especially in areas of doubtful constitutionality, requires careful and purposeful consideration by those responsible for enacting and implementing our laws"). Mississippi statutes provide general authority for municipalities to enforce building

codes but nowhere explicitly authorize denial of notice, hearing, or opportunity to cure—meaning Defendants' procedures are unauthorized regardless of constitutionality.

2. All neighbors in the purported historic district confirm they received no notice of hearing when the district was enacted. Yuri Petrini personally received no individual notice before historic district restrictions were imposed on his property. No public hearing was conducted allowing Yuri or other property owners to contest whether their structures possess historic significance.

3. No findings of fact were made regarding historic character or community interest in preservation. No compliance with state historic preservation procedures occurred. Without notice to Yuri, without hearing for Yuri, and without required findings, no valid historic district designation occurred.

4. The purported restrictions are void ab initio. Every enforcement action based on this phantom authority deprives Yuri personally of procedural due process. As detailed in Statement of Facts ¶3, Yuri was denied his fence application for seventeen months based on aesthetic requirements derived from a void designation imposed without any procedural protections afforded to him.

5. Defendants deprived Yuri Petrini personally of procedural due process by imposing property restrictions without notice or hearing, violating the Fourteenth Amendment.

## COUNT II: SUBSTANTIVE DUE PROCESS - CONSCIENCE-SHOCKING CONDUCT

### 42 U.S.C. § 1983 - Fourteenth Amendment - Against: Jerry Creel, Peter C. Abide, Currie Johnson, Jennifer Polk, Tara Busby, City of Biloxi

1. The deliberate creation and enforcement of a void historic district for improper purposes through concealed illegality shocks the conscience of any reasonable person observing governmental abuse of power.

2. As detailed in Statement of Facts ¶¶1, 3, Defendant Creel admitted on television that the historic district was created for "censuring property owners in the area" and that he exercises this authority in an "arbitrary and capricious" manner. This confession establishes that the purported exercise of police powers serves no legitimate governmental purpose but instead exists to control and punish property owners like Yuri.

3. Historic preservation authority derives validity from protecting cultural heritage, not from censuring property owners. When a building official admits on television that historic district authority exists to "censure property owners," he confesses ultra vires conduct and improper purpose targeting persons like Yuri.

4. As detailed in Statement of Facts ¶7, Defendants Abide and Johnson denied Yuri's personal public records requests seeking documentation of the district's creation to prevent exposure that the designation lacks required procedural foundation. This demonstrates consciousness of guilt and deliberate concealment of constitutional violations affecting Yuri personally.

5. As detailed in Statement of Facts ¶¶2, 4, 5, Defendants maintain enforcement of restrictions they know lack constitutional foundation, using undefined aesthetic standards to selectively target Yuri while approving identical conduct by favored neighbors and issuing unlawful stop work orders without proper procedures.

6. Officials who openly admit improper purposes ("censuring property owners"), characterize their own conduct as arbitrary and capricious, and conspire to conceal illegality engage in conduct that shocks the conscience and violates substantive due process as applied to Yuri personally.

## COUNT III: EQUAL PROTECTION - SELECTIVE ENFORCEMENT (YICK WO)

### 42 U.S.C. § 1983 - Fourteenth Amendment - Against: Jerry Creel, City of Biloxi

1. "Though the law itself be fair on its face, and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution." *Yick Wo v. Hopkins*, 118 U.S. 356, 373-374 (1886).

2. **Similarly Situated Persons Treated Oppositely:** As detailed in Statement of Facts ¶¶3-4, Yuri Petrini filed a federal lawsuit on June 6, 2025, and submitted a fence permit application in March 2024 that has been denied for seventeen months based on undefined "1860s aesthetics" for a fence one hundred fifty feet inside his property line. In contrast, neighbor Stallworth filed no permit application yet received immediate approval from Creel for

11

construction in the illegal city right-of-way without historic review or aesthetic requirements. Stallworth admitted to Yuri that Creel "personally green lighted" his construction.

3. **Documented Violations Approved, Compliance Denied:** As detailed in Statement of Facts ¶4, survey evidence proves Stallworth's fence occupies city right-of-way and encroaches onto adjacent property. Despite these documented violations, Defendant Creel took no enforcement action regarding Stallworth's violations.

4. **No Rational Basis - Retaliation Against Yuri the Person:** As detailed in Statement of Facts ¶4, the only distinguishing factor is that Yuri Petrini filed a federal civil rights lawsuit on June 6, 2025, exercising his First Amendment petition rights, while Stallworth did not file a lawsuit. Stallworth began construction in July 2025 after Yuri's lawsuit filing and received immediate approval from Creel.

5. **"Evil Eye and Unequal Hand" Against Yuri Personally:** As detailed in Statement of Facts ¶4, Defendants administered historic district requirements with retaliatory motive targeting Yuri personally, evidenced by Creel's recorded admission at July 25, 2025 arraignment that Yuri "bypassed us and filed federal lawsuit."

6. As detailed in Statement of Facts ¶¶3-4, Defendants administered requirements with disparate treatment of Yuri versus Stallworth without objective justification, approving Stallworth's multiple violations immediately while denying Yuri's compliance for seventeen months.

7. Defendants' selective enforcement violates Equal Protection by intentionally treating Yuri the person differently from similarly situated person Stallworth without rational basis.

## COUNT IV: EQUAL PROTECTION - CLASS OF ONE

### 42 U.S.C. § 1983 - Fourteenth Amendment - Against: Jerry Creel, City of Biloxi

1. Yuri Petrini the person and neighbor Stallworth the person are similarly situated as persons seeking to erect fences in the same purported historic district, both subject to the same building codes and historic district requirements.

2. Intentional Disparate Treatment: As demonstrated in Statement of Facts ¶¶3-4, Yuri and Stallworth are similarly situated persons seeking to erect fences in the same purported historic district under identical ordinances. The disparate treatment is absolute: Stallworth obtained no building permit, received no historic review, placed fence in illegal city right-of-way, received immediate approval from Creel, experienced zero delay, faced no aesthetic requirements, and faced no enforcement despite survey-confirmed violations. In stark contrast, Yuri properly applied for building permit in March 2024, was subjected to historic review, proposed legal fence location one hundred fifty feet inside property line, was denied by Creel for seventeen months, continues experiencing denial, was subjected to undefined "1860s aesthetics" requirements, and faces active enforcement. This complete inversion of treatment—approving illegal construction by person who didn't sue while prohibiting lawful construction by person who filed federal lawsuit—demonstrates intentional disparate treatment. The treatment changed after Yuri exercised First Amendment petition rights on June 6, 2025.

3. No Rational Basis—Admission of Retaliatory Motive: As detailed in Statement of Facts ¶4, "the conclusion cannot be resisted" that the disparate treatment serves no rational basis but instead targets Yuri for retaliation. *Yick Wo v. Hopkins*, 118 U.S. 356, 374 (1886). At the July 25, 2025 arraignment, Creel admitted on the record that Yuri "bypassed us and filed federal lawsuit," establishing retaliatory motive as the only distinction between Yuri and Stallworth. A rational basis cannot rest on retaliation for exercising constitutional rights. The temporal precision—thirty-four days between lawsuit filing and criminal prosecution, immediate approval for Stallworth's unpermitted construction occurring after Yuri's lawsuit—proves the treatment differential serves punitive rather than regulatory purposes. The intentional disparate treatment without rational basis violates Equal Protection under the class-of-one theory.

## COUNT V: TAKINGS - UNCONSTITUTIONAL CONDITIONS (NOLLAN/DOLAN)

### 42 U.S.C. § 1983 - Fifth Amendment Takings Clause - Against: Jerry Creel, City of Biloxi

1. Government exactions conditioning permit approval on surrender of property rights must satisfy essential nexus to legitimate state interests and rough proportionality to projected development impacts. *Nollan v. California Coastal Commission*, 483 U.S. 825, 837 (1987); *Dolan v. City of Tigard*, 512 U.S. 374, 391 (1994).

2. Defendant Creel demands Yuri personally satisfy undefined "1860s aesthetics" standards as a condition for fence approval. This exaction fails both constitutional tests.

3. **Fails Essential Nexus (\*Nollan\*):** A void historic district designation created without notice for the admitted purpose of "censuring property owners" has no essential nexus to

legitimate governmental interests. Historic preservation authority derives validity from protecting cultural heritage, not from censuring property owners like Yuri through arbitrary aesthetic control.

4. **Fails Rough Proportionality (*Dolan*):** No historic impact has been identified from Yuri's fence. The seventeen-month prohibition is not proportional to any articulated concern. As detailed in Statement of Facts ¶4, Creel's immediate approval of Stallworth's unpermitted fence without aesthetic review proves the exaction serves no proportional regulatory purpose but instead targets Yuri personally for retaliation.

5. The exaction imposed on Yuri personally violates the Fifth Amendment by taking property rights without just compensation and without constitutional justification.

## COUNT VI: FIRST AMENDMENT - CENSORSHIP THROUGH ZONING

### 42 U.S.C. § 1983 - First Amendment - Against: Jerry Creel, City of Biloxi

1. Government cannot wield zoning authority to censure, silence, or control property owners' exercise of constitutional rights. Using building permit regulations to censure property owners constitutes viewpoint-based regulation violating the First Amendment.

2. As detailed in Statement of Facts ¶¶1, 3, Defendant Creel's televised admission that the historic district serves to "censure property owners in the area" is a confession of impermissible First Amendment motive. "Censure" means to express severe disapproval, to condemn officially, to suppress or restrict expression, to control conduct through governmental power.

3. Building permit regulations cannot be used to express governmental disapproval of property owners like Yuri or to suppress their exercise of constitutional rights. When a building official admits on television that permit authority exists to "censure" property owners, he confesses that zoning powers serve censorship purposes rather than legitimate regulation.

4. As detailed in Statement of Facts ¶¶1, 3, Creel's seventeen-month denial of Yuri's fence application, combined with Creel's televised admission of using historic district authority to "censure" property owners, demonstrates retaliatory censorship disguised as aesthetic regulation targeting Yuri personally as a property owner in the district.

5. Creel's admitted use of zoning powers to "censure" property owners like Yuri violates the First Amendment prohibition against viewpoint discrimination and governmental censorship.

## COUNT VII: FIRST AMENDMENT - RETALIATION FOR FEDERAL LAWSUIT

### 42 U.S.C. § 1983 - First Amendment - Against: Jerry Creel, City of Biloxi

1. To establish First Amendment retaliation under *Hartman v. Moore*, 547 U.S. 250, 256 (2006), Plaintiffs must show: (1) protected activity (filing federal lawsuit), (2) adverse government action (fence permit denial and selective enforcement), and (3) causal connection between the two. Here, all three elements are established through temporal proximity and Creel's recorded admission. Thirty-four days after Plaintiffs filed Case 1:25-cv-00178-LG-RPM on June 6, 2025, Creel's treatment of Plaintiffs's fence application shifted from slow-walking to active denial while simultaneously approving Stallworth's unpermitted

construction. At the July 25, 2025 arraignment, Creel admitted the causal connection on the

record, stating Plaintiffs "bypassed us and filed federal lawsuit." *Hartman* requires showing

"retaliation is subject to recovery as the but-for cause" of adverse action. 547 U.S. at 256. The

temporal sequence and recorded admission establish but-for causation: absent the federal

lawsuit, Plaintiffs would have received the same immediate approval Stallworth received for

identical construction.

2. As detailed in Statement of Facts ¶4, on June 6, 2025, Yuri Petrini personally filed federal

civil rights lawsuit Case 1:25-cv-00178-LG-RPM, exercising his First Amendment right to

petition for redress of grievances.

3. As detailed in Statement of Facts ¶3, Creel's denial of Yuri's fence application intensified

immediately following Yuri's federal lawsuit filing. The fence application had been pending

since March 2024, but after Yuri filed his federal lawsuit on June 6, 2025, Creel shifted from

slow-walking the application to active denial based on undefined aesthetic requirements

derived from a void historic district.

4. As detailed in Statement of Facts ¶4, at the July 25, 2025 arraignment on separate criminal

charges, Creel stated on the record that Yuri personally "bypassed us and filed a federal

lawsuit." This admission establishes retaliatory motive targeting Yuri the person who filed

the lawsuit.

5. As detailed in Statement of Facts ¶¶1, 3, Creel's televised confession that he uses historic

district authority to "censure property owners" confirms that permit denials serve punitive

purposes targeting persons like Yuri rather than legitimate regulatory interests.

6. As detailed in Statement of Facts ¶¶1, 3, 4, the temporal proximity between Yuri's lawsuit filing and enforcement intensification, combined with Creel's recorded admission linking enforcement to Yuri's lawsuit and his televised confession of censorship purpose, establishes but-for causation. Defendants retaliated against Yuri personally for exercising his constitutional right to file a federal lawsuit in violation of the First Amendment.

## COUNT VIII: CONSPIRACY TO DEPRIVE CIVIL RIGHTS

**42 U.S.C. §§ 1983 and 1985(3) - Against: Jerry Creel, Peter C. Abide, Currie Johnson, Jennifer Polk, Tara Busby, Donna Parker, City of Biloxi**

1. Defendants Creel, Abide, Johnson, Polk, and Busby reached an agreement to deprive Yuri and all property owners in the purported historic district of their personal constitutional rights through coordinated actions to enforce void restrictions while concealing the designation's illegality. Defendant Parker, a private citizen, joined this conspiracy by providing surveillance and false information to facilitate enforcement actions against Yuri.

2. **The Agreement:** As detailed in Statement of Facts ¶¶1-7, Creel exercises arbitrary historic district authority for the admitted purpose of "censuring property owners" like Yuri. Abide and Johnson conceal public records that would expose the district's illegality. Polk issues unlawful stop work orders without proper procedures. Busby deploys armed officers for civil enforcement and refuses to examine professional surveys. Parker provides surveillance, photographs, and false boundary claims. All participants coordinate to maintain enforcement of void restrictions they know lack constitutional foundation.

18

3. **The Overt Acts Targeting Yuri and Other Property Owners Personally:** As detailed in Statement of Facts ¶¶1-7, Defendants created the historic district without notice in violation of procedural due process, made televised admissions of improper purpose and arbitrary enforcement, engaged in selective enforcement approving Stallworth's violations while denying Yuri's compliance, issued unlawful stop work orders without proper procedures at both 929 Division Street and 1606 Beach Boulevard, denied public records requests, surveilled Yuri's properties, fabricated boundary disputes, refused to provide written aesthetic standards, and jointly maintained enforcement despite knowing the designation is void.

4. **The Injury to Yuri Personally:** As detailed in Statement of Facts ¶¶2-5, Yuri suffered seventeen-month fence denial, unlawful stop work orders at both 929 Division Street and 1606 Beach Boulevard causing property exposure and equipment seizure, and deprivation of procedural due process, equal protection, property rights, and First Amendment petition rights.

5. As detailed in Statement of Facts ¶¶1-7, the conspiracy satisfies all elements. Defendants agreed to deprive property owners like Yuri of equal protection and due process, committed overt acts including void designation, selective enforcement, records concealment, unlawful stop work orders, surveillance, and coordinated obstruction. Yuri suffered injury to property and constitutional rights.

### COUNT IX: PRIVATE CITIZEN LIABILITY UNDER § 1983 (LUGAR)

### 42 U.S.C. § 1983 - Against: Donna Parker

1. Lugar v. Edmondson Oil Co., 457 U.S. 922, 941 (1982), establishes that "private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." Parker's conduct satisfies Lugar's two-prong test for state action: (1) the deprivation was caused by exercise of a state-created right (building code enforcement authority), and (2) Parker acted together with state officials to effect the deprivation. *Id.* at 937.

2. Prong One - State-Created Right Invoked: Parker invoked state-created building code enforcement authority not for legitimate code violations but to resolve her private boundary dispute with Yuri. As detailed in Statement of Facts ¶5, Parker summoned Defendant Busby to Yuri's property at 1606 Beach Boulevard regarding driveway construction, triggering a stop work order that had nothing to do with code compliance and everything to do with Parker's adverse property interest. Parker transformed building code administration from public safety regulation into private dispute resolution service—precisely the type of state procedure invocation *Lugar* addressed: "a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor.'" 457 U.S. at 941.

3. Prong Two - Joint Participation with Officials: Parker went far beyond protected citizen reporting contemplated by the First Amendment. As detailed in Statement of Facts ¶5, Parker was physically present when Busby and inspectors arrived (demonstrating pre-coordination), personally facilitated the inspection by allowing access through Parker's land (providing material assistance), and remained on site while Busby refused to examine Yuri's professional

surveys and issued the stop work order (joint conduct). This level of involvement establishes "willful participant in joint activity with the State" under *Lugar*. 457 U.S. at 941. Parker's physical presence during enforcement, facilitation of property access, and Creel's conditioning removal on Yuri building according to Parker's claimed boundary demonstrate Parker acted as enforcement agent jointly with officials rather than mere complainant. Parker obtained "overt, official involvement" that *Lugar* held sufficient to characterize private party as state actor.

4. As detailed in Statement of Facts ¶5, Parker obtained significant aid from state officials that normal complainants never receive. Busby refused to examine Yuri's professional surveys, placed the stop work order inside Yuri's excavator to seize equipment, and Creel conditioned removal on Yuri building according to Parker's claimed boundary rather than surveyed line—ultra vires conduct adjudicating private civil disputes. Officials communicated with Parker on Sundays regarding Yuri's activities including coordination of Creel's warrantless Sunday surveillance on August 2, 2025, at 929 Division Street, demonstrating abnormal dedication of governmental resources to Parker's private interests.

5. **Constitutional Violations Caused:** Parker's joint action with officials deprived Yuri of Fourth Amendment rights by seizing his excavator without warrant or probable cause. Parker's joint action deprived Yuri of Fourteenth Amendment procedural due process by taking his property without notice or hearing. Parker's joint action violated Fourteenth Amendment equal protection by targeting Yuri for enforcement while Creel took no action regarding Parker's illegal sprinkler system that commits daily trespass onto Yuri's property.

6. **Consciousness of Guilt:** As detailed in Statement of Facts ¶5, following the stop work order, Parker admitted to Yuri that she never intended enforcement to go that far and did not ask officials to issue the stop work order. This admission establishes Parker knew her invocation of state authority triggered unconstitutional deprivation, knew enforcement exceeded legitimate authority, yet attempted to disclaim responsibility for constitutional violations committed at her behest.

7. **Pattern of Escalating Joint Action:** As detailed in Statement of Facts ¶5, Parker continued reporting Yuri's activities and conspiring with officials on multiple occasions after the excavator seizure, escalating governmental involvement. Parker's repeated reports led to progressively egregious misconduct including Creel's warrantless Sunday surveillance during which Creel entered without consent until Yuri filmed him. Parker's pattern of reporting created conditions for Creel's escalating ultra vires conduct, transforming code administration into systematic harassment and unconstitutional surveillance.

8. **Distinguishing from Protected Reporting:** Parker's conduct exceeds constitutional protection for citizen complaints. Protected reporting involves informing authorities of observed violations and allowing independent official investigation. Parker went beyond this by pre-coordinating inspections, physically facilitating property access through her land, remaining present during enforcement, directing officials to ignore professional surveys, maintaining ongoing Sunday communications with officials, and using enforcement to coerce acceptance of her private boundary claims rather than report legitimate code violations.

9. **Selective Enforcement Proving Joint Action for Parker's Benefit:** As detailed in Statement of Facts ¶¶5, 10, Creel took no enforcement action regarding Parker's illegal

sprinkler system that commits daily trespass onto Yuri's property while maintaining

enforcement against Yuri based on Parker's allegations. This selective enforcement

demonstrates officials acted to benefit Parker's private interests rather than serve legitimate

governmental purposes. Parker's use of state enforcement mechanisms to seize disputed land

through officials acting ultra vires violates the Constitution.

10. Parker remains liable under *Lugar* for all constitutional violations flowing from the joint

action she initiated and sustained through ongoing coordination with officials. 457 U.S. at

941-42. Parker is personally liable under section 1983 for depriving Yuri of Fourth

Amendment rights against unreasonable seizure, Fourteenth Amendment procedural due

process rights, Fourteenth Amendment substantive due process rights against conscience-

shocking abuse of governmental power for private purposes, and Fourteenth Amendment

equal protection rights.

## COUNT X: ULTRA VIRES ACTS - VOID EXERCISE OF AUTHORITY

### 42 U.S.C. § 1983 - All Constitutional Provisions - Against: Jerry Creel, City of Biloxi

1. Building officials possess delegated authority to enforce building codes regarding safety

and structural compliance. Historic preservation officials possess delegated authority to

protect structures of historical significance through procedures complying with state law and

constitutional requirements.

2. Building officials possess no authority to "censure property owners." Historic preservation

officials possess no authority to enforce restrictions derived from void designations created

without required notice and hearing. As detailed in Statement of Facts ¶¶1, 3, when officials

admit on television that authority serves improper purposes and is exercised in "arbitrary and capricious" manner, they confess ultra vires conduct beyond scope of lawful delegation.

3. As detailed in Statement of Facts ¶¶1, 3, 4, Defendant Creel's exercise of historic district authority against Yuri is ultra vires because no valid designation exists, the admitted purpose is "censuring property owners" which falls outside the scope of police powers, Creel characterized his exercise as "arbitrary and capricious" admitting absence of standards, the authority is applied selectively to favor Stallworth while punishing Yuri proving individual targeting rather than general regulation, and the authority is enforced through undefined aesthetic criteria granting standardless discretion.

4. Officials exceeding delegated authority "come into conflict with the superior authority of [the] Constitution" and are "stripped of [their] official or representative character." They may be enjoined from continuing ultra vires conduct. *Ex parte Young*, 209 U.S. 123, 159-160 (1908).

5. Every enforcement action Creel has taken against Yuri based on historic district authority is void as ultra vires. Yuri is entitled to immediate injunctive relief prohibiting future ultra vires enforcement and requiring removal of all restrictions imposed on him through void designation.

## COUNT XI: DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS - PROFESSIONAL LICENSE

**42 U.S.C. § 1983 - Fourteenth Amendment - Against: Jerry Creel, City of Biloxi**

1. Yuri's professional licenses create protected property interests. "Property interests...are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Mississippi licensing statutes create Yuri's continuing right to practice these professions.

2. Defendant Creel's enforcement of void historic district restrictions prevents Yuri personally from working on properties within the purported district without satisfying undefined aesthetic standards. This deprives Yuri of his personal property interest in practicing his licensed professions.

3. When Yuri seeks to perform licensed work on properties in the district, Creel denies approvals based on aesthetic requirements that have no legal foundation. As detailed in Statement of Facts ¶¶1, 3, Creel admits on television that he exercises this authority in "arbitrary and capricious" manner for purpose of "censuring property owners."

4. Creel provided no written reasons to Yuri identifying specific code violations. Creel provided no hearing to Yuri before or after depriving him of his ability to work on properties in the district. This deprivation of Yuri's professional license rights through enforcement of void restrictions without notice, without hearing, without written standards, and for admitted improper purposes violates procedural due process.

## COUNT XII: DEPRIVATION OF LIBERTY INTEREST - REPUTATION

### 42 U.S.C. § 1983 - Fourteenth Amendment - Against: Jerry Creel, City of Biloxi

1. "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau*, 394 U.S. 437, 437 (1971).

2. As detailed in Statement of Facts ¶¶1, 3, the historic district enforcement and Creel's televised statements injured Yuri's personal reputation as a licensed contractor in four trades. Creel's public statement that the district serves to "censure property owners" brands all property owners in the district—including Yuri—as subjects of governmental censure, which means official condemnation and disapproval. This stigma attaches to Yuri's professional reputation personally.

3. As detailed in Statement of Facts ¶¶3, 4, Creel's seventeen-month denial of Yuri's fence application based on purported aesthetic deficiencies publicly suggests Yuri personally lacks competence to design structures meeting community standards. The selective enforcement—immediately approving Stallworth's violations while denying Yuri's compliance—publicly demonstrates that Yuri cannot obtain approvals that less-qualified neighbors receive, branding Yuri personally as disfavored or incompetent.

4. The denial forced multiple contractors to abandon Yuri's other projects citing the City's erratic enforcement, demonstrating reputational harm to Yuri's professional standing in the community. This affects Yuri's personal ability to work with other professionals.

5. Defendants deprived Yuri personally of his liberty interest in his professional reputation without due process. Yuri received no notice that historic district designation would subject him to governmental "censure," no hearing to contest the stigma, and no opportunity to clear his name before Defendants destroyed his professional standing through false accusations of aesthetic incompetence based on undefined standards.

## COUNT XIII: VOID FOR VAGUENESS

### 42 U.S.C. § 1983 - Fourteenth Amendment Due Process - Against: Jerry Creel, City of Biloxi

1. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Vague laws offend three values: First, "laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning." Second, "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Id.* at 108-09. These protections represent principles that have "remained relatively immutable in our jurisprudence" and "have ancient roots." *Greene v. McElroy*, 360 U.S. 474, 496 (1959). Third, vague laws chill constitutional rights through uncertainty about what conduct is prohibited.

2. Fair Warning Violation: As detailed in Statement of Facts ¶¶1, 3, Creel demands Yuri satisfy undefined "1860s aesthetics" without providing written definition, examples, or criteria for seventeen months. "Where governmental action seriously injures an individual,

and the reasonableness of the action depends on fact findings, the evidence used to prove the

Government's case must be disclosed to the individual so that he has an opportunity to show

that it is untrue." *Greene*, 360 U.S. at 496. Yuri cannot "steer between lawful and unlawful

conduct" when standards remain unarticulated. This vagueness "traps the innocent"—Yuri

submitted applications in good faith yet faces indefinite denial based on standards never

disclosed to him.


3. Arbitrary Enforcement Violation: As detailed in Statement of Facts ¶¶3, 4, the undefined

standard "impermissibly delegates basic policy matters" to Creel "for resolution on an ad hoc

and subjective basis." Creel admits on television his enforcement is "arbitrary and

capricious." The selective enforcement proves arbitrary application: Creel immediately

approved Stallworth's fence without aesthetic review while denying Yuri's fence for

seventeen months citing undefined aesthetics—demonstrating exactly the "arbitrary and

discriminatory application" *Grayned* prohibits.


4. Improper Delegation—Attorney Gatekeeping: The vagueness extends to all code

enforcement. Defendants refuse written requirements for Certificate of Occupancy despite

five months of requests, then force all communications through private attorneys at

$150/hour. This "impermissibly delegates basic policy matters" to paid attorneys with

financial incentive to prolong disputes—unbridled discretion over code compliance exercised

for profit rather than public safety.


5. The undefined "1860s aesthetics" standard and systematic refusal to provide written

requirements violate *Grayned*'s three-value framework and the ancient procedural protections

*Greene* described, depriving Yuri of due process.

## COUNT XIV: STATE LAW - ABUSE OF PROCESS

**Supplemental Jurisdiction - Mississippi Law - Against: Jerry Creel, Peter C. Abide, Currie Johnson, Jennifer Polk, Tara Busby, Donna Parker, City of Biloxi**

1. Defendants used legal processes for ulterior purposes not proper in regular administration under Mississippi law. Historic district enforcement was used to "censure property owners" like Yuri rather than preserve structures of historical significance. Permit denial was used to punish Yuri for filing federal lawsuit rather than to ensure aesthetic compliance. Records denial was used to conceal constitutional violations affecting Yuri rather than to protect legitimate confidentiality interests.

2. As detailed in Statement of Facts ¶¶1-7, Defendant Creel admits on television that historic district authority serves to "censure property owners"—confession of improper ulterior purpose targeting persons like Yuri. Defendants Polk and Busby issued unlawful stop work orders to punish Yuri rather than ensure code compliance. Defendant Parker conspired with City officials to interfere with Yuri's property rights through false boundary claims. Defendants Abide and Johnson concealed public records to prevent exposure of constitutional violations affecting Yuri. Defendants maintain enforcement against Yuri despite knowing the designation is void and lacking any legitimate regulatory foundation. This conscious use of legal process for improper purposes constitutes abuse of process under Mississippi law.

## COUNT XV: STATE LAW - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**Supplemental Jurisdiction - Mississippi Law - Against: Jerry Creel, Peter C. Abide, Currie Johnson, Jennifer Polk, Tara Busby, Donna Parker, City of Biloxi**

1. Defendants engaged in extreme and outrageous conduct targeting Yuri personally. Defendants created the historic district without notice to Yuri or any property owner. Defendants enforced void restrictions against Yuri for the admitted purpose of "censuring property owners." Creel admitted on television to "arbitrary and capricious" exercise of authority affecting Yuri. Defendants selectively enforced against Yuri by approving Stallworth's violations immediately while denying Yuri's compliance for seventeen months. Defendants concealed from Yuri records that would expose illegality. Defendants used undefined aesthetic standards against Yuri to maintain indefinite permit denial. Defendants branded Yuri as subject of governmental "censure" damaging his professional reputation. Defendant Parker conspired with City officials to fabricate boundary disputes affecting Yuri's property and deployed surveillance of Yuri's construction activities to facilitate enforcement actions.

2. This conduct was intentional and reckless targeting Yuri personally. Creel admits the purpose is censuring property owners like Yuri and that he exercises authority arbitrarily and capriciously. Abide and Johnson deliberately conceal records to prevent Yuri from exposing constitutional violations. Polk issued unlawful stop work orders without justification to obstruct Yuri's projects. Busby deployed armed officers for civil enforcement actions against Yuri. Parker conspired with officials to fabricate boundary disputes affecting Yuri's property.

30

All officials know the designation is void yet continue enforcement against Yuri to maintain control.

3. Yuri personally suffered severe emotional distress from being subjected to governmental "censure" through arbitrary enforcement of void restrictions for seventeen months while watching his neighbor receive immediate approval for worse violations.

4. The conduct targeting Yuri shocks the conscience and exceeds all bounds of decency tolerated in a civilized society. Officials who confess on television to arbitrary abuse of authority for censorship purposes engage in extreme and outrageous conduct under Mississippi law causing Yuri personal emotional distress.

### COUNT XVI: MUNICIPAL LIABILITY UNDER MONELL

### 42 U.S.C. § 1983 and Americans with Disabilities Act - Against: City of Biloxi

1. City of Biloxi is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because constitutional and ADA violations were caused by official policy, custom, and final policymaker decisions.

2. Final Policymakers: Creel (Building Official with final permit authority) and Abide (City Attorney with final legal authority) made decisions constituting official City policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).

3. Policies: Undefined "1860s aesthetics" requirements applied "arbitrary and capricious" per Creel's televised admission; enforcement of void historic district created without notice; records denial "because you sued us."

4. Customs: Selective enforcement (Stallworth immediately approved, Yuri denied seventeen months); retaliatory enforcement (recorded admission: "bypassed us and filed federal lawsuit"); stop work orders without written reasons or cure procedures; ADA noncompliance (ignored accommodation requests June 23 and 26, 2025).

5. Failure to Train/Supervise: City approved Creel's dual conflicting roles; provided no written historic standards; failed to train on due process, stop work procedures, and ADA obligations; failed to correct recorded retaliatory statements and selective enforcement; ratified all violations.

6. Deliberate Indifference: As detailed in Statement of Facts ¶¶8-9, the City's pattern of violations affecting Yuri and multiple other victims (Vandevender plus "several other individuals including disabled persons and minorities") demonstrates deliberate indifference to constitutional rights. The City maintained these customs despite obvious constitutional inadequacy, resulting in predictable violations.

7. ADA Violations: As detailed in Statement of Facts ¶8, Yuri has documented disabilities including narcolepsy and vision impairment from recent surgeries. Yuri requested reasonable accommodations on June 23 and 26, 2025. Defendants failed to respond, failed to engage in the interactive process required by Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and failed to provide accommodations while simultaneously accommodating

Stallworth without requirements. This disparate treatment of disabled individual violates both the ADA and Equal Protection.

8. Damages: Property deterioration, professional reputation harm, contractor abandonment, emotional distress, deprivation of ability to practice licensed professions.

9. "A municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691. Here, violations were committed by final policymakers implementing official policies and customs with deliberate indifference to constitutional and statutory rights.

# RELIEF SOUGHT

## A. DECLARATORY JUDGMENT

Plaintiffss seeks declaratory judgment that the historic district designation is void ab initio, that all property restrictions derived from the designation are void and unenforceable against Yuri and all other property owners, that all aesthetic standards based on the district are invalid, that all enforcement actions based on historic authority against Yuri are ultra vires, and that Yuri is entitled to immediate fence permit approval.

## B. INJUNCTIVE RELIEF

Plaintiffss seeks permanent injunction prohibiting enforcement of void historic district against Yuri and all property owners. Plaintiffs seeks order requiring removal of historic restrictions from Yuri's property and all properties in purported district. Plaintiffs seeks order prohibiting Creel from exercising combined Building Official and Historical Director authority. Plaintiffs seeks order requiring refund of all historic review fees collected from

Yuri and other property owners. Plaintiffs seeks order requiring notice to Yuri and all

property owners that restrictions are void. Plaintiffs seeks order requiring production of all

historic district records to Yuri. Plaintiffs seeks order prohibiting retaliation against Yuri for

challenging void designation.

Plaintiffs seeks injunction requiring Defendant Parker to remove illegal sprinkler system that

commits daily trespass onto Yuri's property at 1606 Beach Boulevard. Plaintiffs seeks

injunction restoring Yuri's full use and possession of land seized through Parker's joint action

with City officials, including restoration of boundary line established by professional survey.

Plaintiffs seeks injunction prohibiting Parker from further invoking City enforcement

authority to resolve private boundary disputes.

## C. MONETARY DAMAGES

Plaintiffs seeks compensatory damages to Yuri for seventeen months property deprivation,

per se damages to Yuri for constitutional violations, emotional distress damages to Yuri

personally, professional reputation harm to Yuri personally, loss of Yuri's property value,

punitive damages for malicious conduct targeting Yuri, and attorney fees and costs under 42

U.S.C. § 1988.

Plaintiffs seeks compensatory damages for driveway construction costs at 1606 Beach

Boulevard, including expenses for building driveway smaller than surveyed property line due

to Defendants' ultra vires enforcement at Parker's behest. Plaintiffs seeks compensatory

damages for equipment seizure (excavator) without warrant or probable cause. Plaintiffs

seeks compensatory damages for loss of use of disputed land wrongfully controlled by Parker

through joint governmental action.

Plaintiffs seeks nominal damages in amount of one dollar per constitutional violation to vindicate constitutional rights even where compensatory damages cannot be precisely calculated, recognizing that "the deprivation of protected rights, in their nature, are incapable of precise evaluation" but warrant acknowledgment through nominal damages.

### D. PROSPECTIVE RELIEF

Plaintiffs seeks removal of Creel from dual roles as Building Official and Historical Director, implementation of written historic district standards if district is ever validly re-designated, valid re-designation procedures with notice and hearing to Yuri and all property owners, independent review of all past denials affecting Yuri and other property owners, and training on constitutional limitations for all officials.

**Respectfully submitted,**

**Dated:** 12/01/25

**Yuri Petrini**
*929 Division Street*
*Biloxi, 39530, MS*
*yuri@megalopolisms.com*
*3055041323*

**Sumire Maeda**

*sumire@megalopolisms.com*
*3054979133*

35

Respectfully submitted at this ~~december 1st~~ , 2025.

_____                        _____
**Yuri Petrini, Pro Se**                              **Sumire Maeda, Pro Se**
Tel: (305) 504-1323                                   Tel: (305) 497-9133
yuri@megalopolisms.com                          sumire@megalopolisms.com
                929 Division Street, Biloxi, MS 39530

### CERTIFICATE OF SERVICE

I filed the foregoing in person with the Clerk of Court, which will send notification of such filing to all counsel of record.

_____
**Yuri Petrini**