**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

YURI PETRINI                                                                    PLAINTIFF

v.                                                          CAUSE NO. 1:25-cv-233-LG-RPM

CITY OF BILOXI, MISSISSIPPI, et al.                            DEFENDANTS

**ORDER GRANTING [41], [43], [55], [66] MOTIONS TO DISMISS
[40] SECOND AMENDED COMPLAINT**

Defendants seek dismissal of Petrini's [40] Second Amended Complaint in their motions to dismiss.  Jerry Creel, Jennifer Polk, and Tara Busby (collectively, "City Employees") filed [41] Motion to Dismiss.  The City of Biloxi, Mississippi (the "City") filed [43] Motion to Dismiss.  Donna Parker filed [55] Motion to Dismiss.  Finally, Peter C. Abide and Currie Johnson & Myers, P.A. (collectively, "Currie Johnson Defendants") filed [66] Motion to Dismiss.  The Court must dismiss most claims because the Court lacks subject matter jurisdiction.  In addition, the Court finds Petrini fails to state a claim on his federal conspiracy claims against the defendants and dismisses them under Federal Rule of Civil Procedure 12(b)(6).  The Court, in its discretion, declines supplemental jurisdiction over Petrini's remaining state law claims.

**BACKGROUND[1]**

Petrini alleges these defendants conspired to violate his rights over a multitude of years and across multiple properties, including 287 Bohn Street,

---

[1] This action does not exist in isolation, but rather, a continuation of Petrini's first case No. 1:25-cv-178-LG-RPM (hereinafter "Case No. 178").

Biloxi, Mississippi ("Division property"),[2] and 1606 Beach Boulevard, Biloxi, Mississippi ("Beach property").

## THE DIVISION PROPERTY

It is undisputed that Petrini's Megalopolis MS-Two, LLC ("Megalopolis Two"), was the actual owner of the Division property. The Division property falls within the City's historic district. As part of the historic district, it is subject to certain aesthetic requirements. Petrini alleges these aesthetic requirements are impermissibly undefined. Petrini alleges Creel, the City's Building Official, encouraged the City to expand the historic district, which includes the Division property. Petrini alleges Creel uses his official authority to advance the Keesler Air Force Base's ("Keesler") interests. Petrini alleges that in 2023, Creel attempted to act as a broker and have Petrini sell the Division property, so it could be a training facility connected to Keesler. Petrini refused to sell the Division property.

Petrini alleges that in 2024, the Division property received an approved roof replacement permit, but Polk, under Creel's direction, issued a stop work order. Petrini alleges there are no reasons for the stop work order, and the stop work order fails to specify the violations. Petrini alleges this 2024 stop work order on the roof replacement is still in effect, so the Division property remains without a roof.

Petrini also applied for a fence permit, but because of the City's alleged undefined aesthetic requirements, Creel denied the permit. In contrast, Petrini

---

[2] The property appears to have two separate addresses under Division and Bohn Street. For purposes of simplicity, the Court will only refer to the Division address.

alleges Creel authorized a fence for Bill Stallworth's property (adjacent to the Division property) without permits or review.  Petrini alleges Stallworth's property has other violations and is subject to the same ordinances as the Division property, but Stallworth's property receives favoritism from the City.

Counts I, II, III, IV, V, VI, VII, X, XI, XII, XIII, and XIV arise from the Division property.  Portions of Counts VIII, XIV, and XV allege claims concerning the Division property.

**THE BEACH PROPERTY**

Petrini owns the Beach property.  He alleges his neighbor, Parker, disputes the location of the Beach property line.  Instead of pursuing a civil action, Parker called the City's code enforcement.  Petrini alleges Parker contacted City officials about Petrini covering an abandoned sewer and called Creel on Sundays about Petrini's activities.  Petrini alleges Parker's presence during the code enforcement and allowing the City's employees to access the Beach property through her land constitutes a conspiracy.  Specifically, Petrini alleges a conspiracy between Parker and the City to deprive him of his Fourth and Fourteenth Amendment rights.

Separate from the properties, Petrini presents a two-sentence allegation that the City failed to accommodate him, as required under the Americans with Disabilities Act ("ADA").  Petrini alleges he is disabled because of his narcolepsy and vision impairment from a recent surgery.  Count XVI arises from these allegations.

## SUBJECT MATTER JURISDICTION

The movants argue the Court lacks subject matter jurisdiction and must dismiss pursuant to Rule 12(b)(1). "Federal courts are courts of limited jurisdiction. *We must presume that a suit lies outside this limited jurisdiction*, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 537 (5th Cir. 2017) (citation modified) (emphasis added); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). If there are jurisdictional issues, "the court cannot proceed unless it makes an independent determination that it has jurisdiction." *Riley v. Bondi*, 606 U.S. 259, 273 (2025).

In this case, Petrini bears the burden of proving subject matter jurisdiction. *See Settlement Funding, L.L.C.*, 851 F.3d at 537. In reviewing subject matter jurisdiction, a court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012) (citation modified). Even when reviewing Petrini's pleadings for subject matter jurisdiction, the Court is mindful to read his pleadings liberally because he is a pro se plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The Court considers whether Petrini has standing for the claims involving the Division property. "Article III of the United States Constitution limits the judicial Power to Cases and Controversies. Because of that limitation, any plaintiff

invoking the judicial Power must establish the irreducible constitutional minimum of standing." *Lutostanksi v. Brown*, 88 F.4th 582, 585 (5th Cir. 2023) (citation modified).  Courts determine standing "at the time the suit is filed." *Reagan Nat'l Advert. of Aus., Inc. v. City of Cedar Park*, No. 20-50125, 2021 WL 3484698, at *5 n.6 (5th Cir. Aug. 6, 2021) (citation modified).  Standing to sue requires "(1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation modified).  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560–61).  Courts evaluate standing "on a claim-by-claim basis." *Hotze v. Hudspeth*, 16 F.4th 1121, 1125 (5th Cir. 2021) (citation modified).

Most counts arise from the defendants' alleged wrongdoings at the Division property.  Megalopolis Two, an LLC, owned the Division property at the relevant times—not Petrini.  "Upon the creation of an LLC, the company becomes a distinct legal entity, separate from the identity of the owner-members." *Healy v. AT&T Servs., Inc.*, 362 So. 3d 14, 23 (Miss. 2023) (citation modified).

"Under Mississippi law, [a] member has no interest in specific limited liability company property." *In re Ochello*, No. 20-00717-KMS, 2022 WL 963755, at *10 (Bankr. S.D. Miss. Mar. 30, 2022) (internal quotation marks omitted) (quoting Miss. Code Ann. § 79-29-701).  Mississippi prohibits individual plaintiffs from

bringing suit "to redress a wrong to the" LLC because "the cause of action belongs solely to the" LLC and only the LLC may assert the cause of action. *See Healy*, 362 So. 3d at 23–24 (citation modified). In sum, "a member of an LLC lacks standing to sue individually where the cause of action belongs to the company, unless the member's alleged harm is distinct from harm suffered by the company." *See Cruden Bay Holdings, LLC v. JPMorgan Chase Bank N.A.*, No. 3:21-cv-1170-x, 2024 WL 3974724, at *2 (N.D. Tex. Aug. 27, 2024) (citation modified) (citing *Duran v. City of Corpus Christi*, 240 F. App'x 639, 641 (5th Cir. 2007). Therefore, to the extent Petrini attempts to raise Megalopolis Two's claims, they must be dismissed for lack of standing.

Nevertheless, Petrini argues he has standing because he raises personal interests rather than Megalopolis Two's injuries. *See* Pl.'s Resp. [49] at 14 (citing *Franchise Tax Bd. of Cal. v. Alcan Aluminium, Ltd.*, 493 U.S. 331, 336 (1990)). Petrini argues, under Supreme Court caselaw, a "sole member may sue for injuries affecting him personally[.]" *See id.* Courts search for a "legally cognizable interest" to find a particularized injury in fact. *Spokeo, Inc.*, 578 U.S. at 339 (citation modified). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (citation modified).

Therefore, the Court shall undertake a meticulous claim-by-claim analysis for the counts associated with the Division property to determine whether Petrini suffered a *personal* injury rather than raising Megalopolis Two's injuries. *See Hotze*, 16 F.4th at 1125.

-6-

Petrini's Count I (Procedural Due Process) only raises Megalopolis Two's alleged interests, namely property restrictions imposed without notice or hearing. *See* 2d Am. Compl. [40] at 9.  Count II (Substantive Due Process) alleges the defendants intended to target the *property owner's interests*, which again are Megalopolis Two's interests—not Petrini's.  *See id.* at 10–11.  Counts III and IV (Equal Protection) do not allege Petrini's interest.  *See id.* at 11–14.  Count V (Takings Clause) alleges impermissible government control over *property rights*, which solely belong to Megalopolis Two's legal interests.  *See id.* at 14–15.  Count VI (First Amendment censorship) alleges Creel sought to censure "*property owners* in the area" through the historic district; such allegations only allege harms to Megalopolis Two's interests.  *See id.* at 15–16 (emphasis added).  In Count VII (First Amendment retaliation), the defendants allegedly denied Megalopolis Two's fence permit in retaliation of Petrini's speech; only Megalopolis Two has an interest in the fence permit.  *See id.* at 16–17.  Count VIII (Conspiracy to Deprive Civil Rights) does not allege Petrini's interests suffered because he has no interest in the Division property; to the extent Petrini alleges harms arising from the Beach property, he maintains standing.  *See id.* at 18–19.  Count X rests on the allegation that Creel and the City attempted to censure the Division property's owner, so only Megalopolis Two's interests suffered from this alleged ultra vires act.  *See id.* at 23–24.  Count XII alleges Petrini's personal interest in his reputation suffered because Creel and the City allegedly sought to "censure property owners[,]" *see id.* at 26; again, Megalopolis Two owned the property, so only Megalopolis Two's reputation

may have been harmed.  Count XIII (Due Process) only raises Megalopolis Two's property interests.  Count XIV (state law abuse of process) references Megalopolis Two's property interests in permit denials and code enforcement of the Division property, but to the extent Petrini alleges harms arising from the Beach property, he maintains standing.  Count XV (state law intentional infliction of emotional distress) relies on alleged injuries to the property owner (Megalopolis Two), but to the extent Petrini alleges harms arising from the Beach property, he maintains standing.

Count XI alleges the City and Creel injured Petrini's interest in his professional license because they prevented him from working on the Division property without due process.  Injuries creating standing cannot be "merely incidental" to the company's injuries, but rather, they must be "direct" and "nonderivative injuries sufficient to deflect the [shareholder rule.]"  *Duran*, 240 F. App'x at 642 (citing *Pagan v. Calderon*, 448 F.3d 16 (1st Cir. 2006)).[3]  "Courts generally refuse to recognize standing based on economic harm that is merely a consequence of an injury suffered by another party."  *Id.* at 641.

An injury to Petrini's professional license is incidental to (and derivative of) the direct injury inflicted on Megalopolis Two: Creel and the City's alleged "enforcement of void historic district restrictions[.]"  *See* 2d Am. Compl. [40] at 25.

---

[3] The *Duran* court relied on the First Circuit's reasoning.  *See id.* at 643.  The First Circuit explains individuals "do not have standing to sue in their personal capacities unless the alleged misconduct causes harm to them separate and distinct from the injury inflicted upon the" company.  *See Pagan*, 448 F.3d at 29.

Therefore, Petrini's incidental injury does not create standing. *See Duran*, 240 F. App'x at 642–43 (citation omitted). The Court finds Petrini does not have standing under Count XI.

Even reviewing the [40] Second Amended Complaint liberally, the Court determines that the extent of Petrini's alleged harms associated with the Division property are, at most, economic. *See Duran*, 240 F. App'x at 641. Because Petrini did not own the property at the relevant times, nor have any interest in it, he cannot suffer an injury in fact under Article III standing. *See Spokeo, Inc.*, 578 U.S. at 339; *see also Tu Nguyen v. Bank of Am.*, 728 F. App'x 387, 387–88 (5th Cir. 2018) (per curiam) (Plaintiff lacks standing where Texas law does not allow LLC members an interest in specific LLC property.). Further, he has not alleged defendants' alleged actions invaded *his* personal interests. Therefore, Petrini necessarily fails his burden to meet the irreducible minimum of standing. *See Lutostanksi*, 88 F.4th at 585; *Ballew*, 668 F.3d at 781. To the extent Counts VIII, XIV, and XV allege claims under the Division property, they are dismissed for lack of standing; Petrini has standing for Counts VIII, XIV, and XV to the extent they reference the Beach property. The Court dismisses Counts I, II, III, IV, V, VI, VII, X, XI, XII, and XIII without prejudice for lack of standing.

## DISCUSSION OF PLEADINGS

What then remains? Factually gaunt portions of Counts VIII, XIV, and XV— a conspiracy to violate civil rights claim and two state law claims respectively— survive to the Court's Rule 12(b)(6) analysis. The Court also has jurisdiction to

consider Count IX, a purported private citizen liability under § 1983. Count XVI

focuses on the City's *Monell* liability and raises a failure to accommodate under the

ADA. The defendants argue a variety of reasons for the Court to dismiss under

Rule 12(b)(6).

Under a Rule 12(b)(6) motion to dismiss, the "court accepts all well-pleaded

facts as true, viewing them in the light most favorable to the plaintiff." *Martin K.*

*Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)

(citation modified). Courts do not have to accept legal conclusions presented as

factual allegations. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th

Cir. 2019). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of

'further factual enhancement.'" *Id.* (alteration in original) (quoting *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009)). In other words, "conclusory allegations,

unwarranted factual inferences, or legal conclusions are not accepted as true."

*Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023) (citation modified).

A plaintiff must plead "enough facts to state a claim to relief that is plausible

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). Ultimately, the [40] Second

Amended Complaint must nudge Petrini's claims "across the line from conceivable

to plausible." *See Twombly*, 550 U.S. at 570.

"[T]he factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker*, 938 F.3d at 735 (citation omitted); *see Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) ("It is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." (citation modified)).  The Court also considers "documents incorporated into the complaint by reference." *See Jackson v. City of Hearne*, 959 F.3d 194, 204–05 (5th Cir. 2020) (citation modified); *see also Verastique v. City of Dallas*, 106 F.4th 427, 430 n.4 (5th Cir. 2024).

## I.  FEDERAL CLAIMS

### A.  CONSPIRACIES UNDER §§ 1983 AND 1985(3)

In Counts IX and VIII, Petrini alleges that Parker, a private actor, conspired with the other defendants to violate Petrini's civil rights, and the defendants are liable under §§ 1983 and 1985(3).  The Court addresses the § 1983 claims first.

"Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights elsewhere conferred." *Grigsby & Assocs., Inc. v. City of Shreveport*, 294 F. Supp. 3d 529, 539 (W.D. La. 2018) (citation modified).  "To state a § 1983 conspiracy claim, a plaintiff must allege: (1) an agreement between a defendant and others, involving at least one person acting under color of state law to commit an illegal act; and (2) an actual deprivation of the plaintiff's rights in furtherance of that agreement." *Bright v. City of Killeen*, 532 F. Supp. 3d 389, 397–98 (W.D. Tex. 2021) (citation modified).  "A conspiracy claim is not

actionable if there is no deprivation of the asserted civil right." *Bevill v. Wheeler*, 103 F.4th 363, 374 (5th Cir. 2024) (citation modified); *see Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) ("No deprivation, no § 1983 conspiracy.").

### 1. Official Capacities

City Employees argue that any official capacity claims under Count VIII should be dismissed as duplicative. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)). Where there are duplicate claims against the officers and the respective governmental entity, a court should dismiss claims against the officers in their official capacities. *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (citation omitted). While Currie Johnson Defendants did not address the issue of official capacity claims, the Court nevertheless finds the same analysis applicable to these defendants. Because Petrini sued the City, any official capacity claims in Count VIII against City Employees and Currie Johnson Defendants will be dismissed as duplicative. *See id.*

### 2. Private Liability Under § 1983

Petrini purports that Parker, a private individual, conspired with the other defendants to deprive him of his civil rights. Generally, the Constitution protects against infringement of rights by governments, not private actors or individuals. *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005) (quoting *Lugar v. Edmondson Oil*

*Co.*, 457 U.S. 922, 936 (1982)).  "Section 1983 provides a remedy" only where the deprivation arises "under color of state law or state action."  *Id.* (citation modified). If the alleged deprivation "is fairly attributable to the state," then § 1983 reaches private actors.  *Glotfelty v. Karas*, 512 F. App'x 409, 413 (5th Cir. 2013) (citation modified).  Conduct is fairly attributable to the state if "the deprivation was caused by the exercise of some right or privilege created by the state . . . , and that the party charged with the deprivation may fairly be said to be a state actor."  *Id.* at 413–14 (citation modified).

Petrini relies on the joint action test,[4] which demonstrates "that the private actor was a willful participant in joint activity with the State or its agents."  *Id.* at 414 (citation modified).  Under the joint action test, a plaintiff must establish: (1) "an agreement or meeting of the minds between the state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right," and (2) "that the private actor was a willing participant in joint activity with the state or its agents."  *Hernandez v. Causey*, 124 F.4th 325, 337 (5th Cir. 2024) (citation modified).  A court begins its inquiry "by identifying the specific conduct of which the plaintiff complains."  *Glotfelty*, 512 F. App'x at 414 (citation modified).

Petrini alleges the following conduct: Parker, his neighbor at the Beach property, had a boundary dispute with the Beach property line.  Rather than

---

[4] The Supreme Court in *Lugar* identifies four tests to determine whether the challenged conduct is fairly attributable to the state.  *See Lugar*, 457 U.S. at 922; *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) (summarizing the tests).  Petrini appears to rely on the joint action test.

initiating a private civil action, Parker called the City's code enforcement regarding

the Beach property's driveway.  When Busby and the inspectors arrived to inspect

the property, Parker was present at the property.  Further, Parker allowed "Busby

and inspectors . . . access [to Petrini's] property through Parker's land."  2d Am.

Compl. [40] at 6.  Parker remained present while Busby issued a stop work order on

Petrini's excavator.  After Busby issued the stop work order, Parker told Petrini

"that she never intended enforcement to go that far and did not ask officials to issue

the stop work order[.]"  *Id.* at 7.  Finally, "Parker called City officials about an

abandoned sewer [Petrini] covered on a neighbor's lot . . . and communicated with

Creel on Sundays regarding [Petrini's] activities."  *Id.*[5]

Taking all well-pleaded facts as true, the Court finds Petrini fails to allege a

conspiracy under the joint-action test.  "A private party does not act under color of

state law when she merely elicits but does not join in an exercise of official state

authority."  *Moody v. Farrell*, 868 F.3d 348, 353 (5th Cir. 2017) (citation modified);

*see Polacek v. Kemper County*, 739 F. Supp. 2d 948, 953 (S.D. Miss. 2010) (collecting

cases).  Petrini does not allege that the other defendants "were aware of any

improper motive on the part of [Parker], which might suggest that the [other

defendants] were knowingly facilitating [Parker's private] vendetta."  *See Polacek*,

739 F. Supp. 2d at 954.  Further, the Court cannot attribute Parker's alleged misuse

---

[5] To the extent Petrini raises Parker's other alleged actions, the Court deems them conclusory and unwarranted, so the Court will not consider them at this stage.  *See Allen*, 65 F.4th at 743 (citation modified) ("Conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true.").

of a valid code enforcement to the City or other defendants. *See Daniel v. Ferguson*, 839 F.2d 1124, 1130 (5th Cir. 1988) ("An allegation that private defendants simply misused a valid state statute does not state a cause of action under § 1983.").

Petrini argues Parker's presence during the Beach property inspection demonstrates pre-coordination. Further, he argues Parker's presence while Busby issued a stop work order and Parker allowing Busby and the inspectors access to the Beach property, through her own property, "demonstrates she acted as enforcement agent rather than mere complainant." 2d Am. Compl. [40] at 6. "Allegations of a conspiracy that are merely conclusory, without reference to specific facts, will not suffice." *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004) (citation modified); *see Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987) ("Bald allegations that a conspiracy existed are insufficient."); *Polacek*, 739 F. Supp. 2d at 952 ("[I]t is not enough merely to recite that there was an agreement or that defendants conspired or acted in concert, for these are *conclusions*, not *facts*.").

Petrini fails to show that Parker is a willful participant to the City's actions at the Beach property. *See Glotfelty*, 512 F. App'x at 413–14 (5th Cir. 2013). Therefore, the Court dismisses Count IX without prejudice.

### 3. Intracorporate-conspiracy Doctrine

City Employees argue that the intracorporate-conspiracy doctrine applies, so Petrini's Count VIII fails to state a conspiracy. The Fifth Circuit consistently holds that a government "and its employees are a single legal entity which is incapable of conspiring with itself." *Konan v. U.S. Postal Serv.*, 96 F.4th 799, 805 (5th Cir. 2024)

(citation modified), *vacated and remanded on other grounds by* 607 U.S. 391 (2026). The City Employees are employees of the City of Biloxi, and the Currie Johnson Defendants (while typically a private law firm and partner), are the City's designated City Attorney and City Attorney Contact.[6]

Petrini argues that because he alleges Parker is a part of the conspiracy, the intracorporate-conspiracy doctrine cannot apply. As discussed *supra*, Petrini fails to allege Parker is a member of a conspiracy. Because the remaining defendants (the City, City Employees, and Currie Johnson Defendants) are the same entity, the intra-corporate conspiracy doctrine applies and the §§ 1983 and 1985 claims fail.

In the alternative, Petrini's § 1985(3) claim fails to allege racial animus. A plaintiff must allege the following under a 42 U.S.C. § 1985(3) claim:

(1) a conspiracy involving two or more persons;
(2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and
(3) an act in furtherance of the conspiracy;
(4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

*Tex. Democratic Party v. Abbott*, 961 F.3d 389, 410 (5th Cir. 2020) (citation modified). "In the Fifth Circuit, the only conspiracies actionable under section

---

[6] The Court takes judicial notice that Currie Johnson is the City Attorney. *See* Fed. R. Evid. 201(b). According to the City's resolution appointing the City Attorney, only Currie Johnson is the City Attorney. *See* City of Biloxi, Miss. Res. No. 434-25 (2025). As the City of Biloxi City Attorney, Currie Johnson is "the director of the legal department . . . and shall also be the chief legal officer of the city." See Code of Ordinances of the City of Biloxi, Miss. § 2-1-2(a) (citation modified); City of Biloxi, Miss. Res. No. 434-25 (2025) (same). The Court finds that, because Currie Johnson is the City Attorney, it is part of the same legal entity as the City in this context. *See Hilliard v. Ferguson,* 30 F.3d 649, 653 (5th Cir. 1994) (applying doctrine to school board of individual members).

-16-

1985(3) are those motivated by racial animus." *Cantú v. Moody*, 933 F.3d 414, 419–20 (5th Cir. 2019) (citation modified); *see also Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).  Petrini's claim lacks an allegation of racial animus, so it is not actionable under Fifth Circuit case law.  *See Cantú*, 933 F.3d at 419–20.

As an aside, Petrini cherry-picks and contorts the City Employees' [42] Memorandum in Support for the misrepresentation that these defendants admitted Parker coordinated with them in the conspiracy.  *See* Pl.'s Resp. [49] at 8 (misrepresenting City Employees' positions as: "Parker was present at Plaintiffs' property when Busby and inspectors arrived, demonstrating pre-coordination of the inspection"); Pl.'s Resp. [48] at 9 (same).  In truth, the City Employees' full sentence reads: "*It is further alleged* that Parker was present at Plaintiffs' property when Busby and inspectors arrived, demonstrating pre-coordination of the inspection." Def.s' Mem. [42] at 5 (emphasis added).  "[A]ll litigants appearing before this Court have a duty of candor to the Court."  *Invasix, Inc. v. Allmond*, No. SA-20-CV-01135-JKP, 2021 WL 5355929, at *4 (W.D. Tex. Nov. 17, 2021) (collecting cases).  The Court again encourages Petrini to review Federal Rule of Civil Procedure 11.[7]

---

[7] Rule 11(b) and (c) requires "pro se litigants to conduct a reasonable inquiry into the law and facts before signing written motions, and other documents, and prescribing sanctions for violation of these obligations."  Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment (citation modified).  "The rule continues to require litigants to 'stop-and-think' before initially making legal or factual contentions" and "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable."  *See id.* (citation modified).

The Court dismisses the remainder of Count VIII for failure to state a claim against the defendants.

## B.  AMERICANS WITH DISABILITIES ACT

Count XVI alleges the City violated the ADA by not accommodating Petrini's narcolepsy and recent eye surgeries.  Title II of the ADA provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  "Public entities" includes local governments.  § 12131(1)(A).

The City argues Petrini did not plead a disability.  An ADA claim requires a plaintiff alleging a disability within the meaning of the Act.  *Hughes v. Terminix Pest Control, Inc.*, No. 23-30617, 2024 WL 3440465, at *1 (5th Cir. July 17, 2024).  A disability exists under the ADA in "one of three conditions: 'a physical or mental impairment that substantially limits one or more major life activities of such individual' (actual disability); 'a record of such an impairment' (recorded as disabled); or 'being regarded as having such an impairment' (regarded as disabled)."  *Pietsch v. FMC Techs., Inc.*, No. 24-20514, 2026 WL 561183, at *2 (5th Cir. Feb. 27, 2026) (quoting 42 U.S.C. § 12102(1)(A)–(C)).  Petrini alleges that he has a qualifying disability because of his narcolepsy and eye surgeries.

"A[] [diagnosis of the] impairment, standing alone, is not necessarily a disability."  *Alleman v. La. Dep't of Econ. Dev.*, 698 F. Supp. 2d 644, 662 (M.D. La. 2010).  An impairment qualifies as a disability when it "directly limit[s] the life

activity at issue." *Hughes*, 2024 WL 3440465, at *1 (citation omitted). "[I]ndirect limitations on a major life activity" do not qualify as a disability. *Id.* A major life activity includes seeing, sleeping, "concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

A person "unable to perform a major life activity that the average person in the general population can perform, or to be significantly restricted in the ability to perform it" qualifies as a substantial limitation. *Hale v. King*, 642 F.3d 492, 500 (5th Cir. 2011) (citation modified). A plaintiff cannot merely claim that his major life activities are substantially limited; he must allege facts to support a reasonable inference that his impairment substantially limits him. *See id.* ("The complaint did little to expound on the impact of these conditions on [the plaintiff's] health."); *Luedecke v. Tenet Healthcare Corp.*, No. 3:14-CV–1582-B, 2015 WL 58733, at *6 (N.D. Tex. Jan. 5, 2015) (dismissing where plaintiff failed to present "any facts describing the difficulties he experiences in performing any [major] activities"); *see also Kirk v. Our Cmty. Our Kids*, No. 3:25-CV-0066-D, 2025 WL 2432614, at *7 (N.D. Tex. Aug. 22, 2025) (collecting cases).

Petrini alleges he has narcolepsy, and he had eye surgeries that substantially limit his major life activities. 2d Am. Compl. [40] at 32. Assuming that both are impairments, Petrini has not alleged how they substantially limit him. *See Hale*, 642 F.3d at 500 (failing to provide facts on impact of impairments is grounds for dismissal). Because Petrini did not allege how narcolepsy or the eye surgeries substantially limit his major life activities, he does not qualify as disabled under the

ADA. *See Pietsch*, 2026 WL 561183, at *2. Therefore, he cannot state a claim under the ADA. Because Petrini fails to allege he is qualified as disabled under the ADA, the failure to train theory under *Monell* necessarily fails as well.

As an alternative ground for dismissal, the Court finds persuasive the City's argument that Petrini engaged in claim splitting for the ADA claim. *See Bank of N.Y. Mellon v. Riley*, No. 21-40383, 2022 WL 1773364, at *3–4 (5th Cir. June 1, 2022) (discussing claim splitting). *Compare* Case No. 178 2d Am. Compl. [96] at 10–11, *with* 2d Am. Compl. [40] at 32–33. "The rule against claim splitting prohibits a plaintiff from prosecuting his case piecemeal" and "bringing another part in a later suit." *Aldridge v. Cain*, No. 1:20-cv-321 HTW-MTP, 2022 WL 22258415, at *4 (S.D. Miss. Sep. 27, 2022) (citation modified). Here, both parties to the ADA claims are identical (or otherwise in privity), and under the transactional test, the Court determines that the factual predicates (City failed to accommodate Petrini for his narcolepsy and eye surgeries) between both lawsuits are the same nucleus of operative fact. *See Bank of N.Y. Mellon*, 2022 WL 1773364, at *3–4; *Armadillo Hotel Grp., L.L.C. v. Harris*, 84 F.4th 623, 629 (5th Cir. 2023) (citation modified) (explaining courts consider whether factual predicates are "related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations"). Because Petrini engaged in claim splitting, the Court in its discretion alternatively dismisses the ADA claim on this ground. *See Matter of Super Van Inc.*, 92 F.3d 366, 371 (5th Cir. 1996) (The main purpose of rule against claim splitting is "to discourage unsavory

tactical maneuvers" and "to protect the defendant from being harassed by repetitive actions based on the same claim."). The Court dismisses Count XVI without prejudice.[8]

## II.  STATE LAW CLAIMS

The Court has dismissed the claims it has jurisdiction over.  In respecting federalism, the Court declines to exercise supplemental jurisdiction over these remaining state law claims for abuse of process and for intentional infliction of emotional distress.  *See* 28 U.S.C. § 1367(c)(3); *Enochs v. Lampasas County*, 641 F.3d 155, 161 (5th Cir. 2011) (explaining general rule of dismissing pendant state claims when federal claims are dismissed).  The Court dismisses Counts XIV and XV without prejudice.

### ARTIFICIAL INTELLIGENCE

City Employees assert that Petrini, in his [49] Response in Opposition, utilizes artificial intelligence ("AI"), which hallucinated a case's holding and the allegations made in Petrini's earlier Case No. 178.  The Court is well-versed in the allegations made in Case No. 178, and City Employees are correct that *nowhere* does Case No. 178 meaningfully concern itself with a roof stop work order.  *See* Case No. 178 Order [156] at 1–7 (summarizing the Second Amended Complaint's facts).  This situation is not the first time the Court has cautioned against "AI's potential

---

[8] The Court cannot address Petrini's other *Monell* allegations in Count XVI because they relate to the Division property claims.  As discussed *supra*, the Court lacks subject matter jurisdiction over these claims.

misuse[.]"  *See* Case No. 178 Order [9] at 3.  The Court reiterates our sister court's

observation:

> Courts exist to decide controversies fairly, in accordance with the law.  This function is undermined when litigants using AI persistently misrepresent the law to the courts.  AI is a powerful tool, that when used prudently, provides immense benefits.  When used carelessly, it produces frustratingly realistic legal fiction that takes inordinately longer to respond to than to create.  *While one party can create a fake legal brief at the click of a button*, the opposing party and court must parse through the case names, citations, and points of law to determine which parts, if any, are true.  As AI continues to proliferate, this creation-response imbalance places significant strain on the judicial system.

*Ferris v. Amazon.com Servs., LLC*, 778 F. Supp. 3d 879, 880–81 (N.D. Miss. 2025).

Recently, the Fifth Circuit cited *Ferris* favorably.  *See Fletcher v. Experian Info.*

*Sols., Inc.*, 168 F.4th 231, 234 n.3 (5th Cir. 2026) (noting that "*pro se* litigants are

[not] immune from sanctions for committing the same misconduct" through AI

hallucinations).

### CONCLUSION

To the extent the parties raise alternative arguments, the Court has

considered them and determines they would not alter the result.  The Court

dismisses all claims without prejudice.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendants

Jerry Creel, Jennifer Polk, and Tara Busby's [41] Motion to Dismiss; Defendant

City of Biloxi, Mississippi's [43] Motion to Dismiss; Defendant Donna Parker's [55]

Motion to Dismiss; and Defendants Peter C. Abide and Currie Johnson & Myers,

P.A.'s [66] Motion to Dismiss are hereby **GRANTED**.  Plaintiff Yuri Petrini's claims

in his [40] Second Amended Complaint are hereby **DISMISSED WITHOUT**

**PREJUDICE**.  A separate final judgment will be entered pursuant to Federal Rule

of Civil Procedure 58.

      **SO ORDERED AND ADJUDGED** this the 30th day of June, 2026.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE